U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 2 8 2017

CLERK, U.S. DISTRICT COURT
By_____
              Deputy

DESMOND LEDET, §
§
        Petitioner, §
§
v. § No. 4:15-CV-882-A
§
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
        Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Desmond Ledet, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, Director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I. Procedural History

In June 2009 petitioner was indicted in Tarrant County, Texas, Case No. 1152016D, with aggravated sexual assault. (Clerk's R. 2, ECF No. 25-17.) Petitioner's jury trial commenced on June 22, 2010, at the conclusion of which the jury found

petitioner guilty of the lesser-included offense of sexual assault, and the trial court assessed his punishment at 20 years' imprisonment. (*Id.* at 205.) The Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (Mem. Op. 10, ECF No. 25-3.) Petitioner also filed a state postconviction habeas-corpus application challenging his conviction, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. ("Action Taken," ECF No. 26-10.) This federal petition followed.

The state appellate court summarized the evidence at trial as follows:

> The complainant testified that appellant approached her in his truck at Jasmine Food Store on East Berry Street in Fort Worth and asked if she wanted a ride; she was walking to find a telephone, so she agreed. She also said that appellant told her he needed to stop at a friend's house along the way. Appellant drove to an apartment complex and left the complainant alone in the truck for about five minutes. When he returned, he drove to the back of the complex, and the complainant started to feel nervous. She told appellant that she would find another way home.
>
> According to the complainant, when she tried to step out of the truck, appellant pulled a gun from the driver's side door, pointed it at her, told her to get back in the truck, and threatened to kill her if she screamed.

The complainant testified that appellant told her to pull off her panties; she began to beg him not to "do this." Appellant became more aggressive, pulled off the complainant's panties, ordered her to face backward in the seat, placed his hands around her neck, and forced her to have sex with him. Appellant then got back in the driver's seat and drove off with the complainant still in the truck. She jumped out on a bridge and ran across the street to a pay phone where she called 911.

The evidence shows that police took the complainant to the hospital where hospital personnel performed a sexual assault examination. Semen with unidentified DNA was taken from the complainant's vagina, ankle, and panties and preserved; that DNA was determined to originate from appellant after the complainant identified him in a photo lineup approximately five years later.

(Mem. Op. 2-3, ECF No. 25-3.)

The defensive theory at trial was to discredit the victim with her admission to using alcohol and crack cocaine at the time of the offense and Petitioner's testimony that she approached him at a car wash and propositioned him with sex in exchange for money to buy crack cocaine; that he gave her money for crack cocaine; that the sex was consensual; and that he believed she was in a "cocaine-induced, paranoid, schizophrenic, panic attack" based on her "schized out" behavior. (Reporter's R., vol. 5, 112-32, 163, 171, ECF No. 25-9.)

## II. Issues

In eleven grounds for relief, petitioner claims that he received ineffective assistance of trial counsel. (Pet. 6-7 & Attach. 1-10, ECF No. 1.)

### III. Rule 5 Statement

Respondent believes that petitioner has sufficiently exhausted his state court remedies as to the claims raised and that the petition is not time-barred or subject to the successive-petition bar. (Resp't's Answer 5, ECF No. 21.) 28 U.S.C. §§ 2244(b), (d) & 2254(b).

### IV. Discussion

*Legal Standard for Granting Habeas Corpus Relief*

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops

4

short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Further, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law, as determined by the Supreme Court of the United States" unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams,* — U.S. —, 133 S. Ct. 1088, 1094 (2013); *Harrington*, 562 U.S. at 99; *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003).

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id*. at 689.

The Supreme Court recently emphasized in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective-assistance-of-counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a

6

> criminal conviction in a United States district court.
> Under AEDPA, though, it is a necessary premise that the
> two questions are different. For purposes of §
> 2254(d)(1), "an *unreasonable* application of federal law
> is different from an *incorrect* application of federal
> law." A state court must be granted a deference and
> latitude that are not in operation when the case
> involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams,* 529 U.S. at 410)).

Accordingly, it is necessary only to determine whether the state

courts' rejection of petitioner's ineffective assistance claims

was contrary to or an objectively unreasonable application of

*Strickland. Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Kittelson*

*v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle,* 343

F.3d at 443.

Petitioner was represented at trial by Curtis L. Fortinberry

and Lindsay M. Gilland. In response to petitioner's allegations,

Fortinberry filed an affidavit in the state habeas proceedings,

which the state habeas court found to be credible. (State Habeas

R., vol. 2, 489, ECF No. 27-9.) The state habeas court adopted

the state's proposed findings of fact, which are largely

consistent with counsel's affidavit and the documentary record.

The Texas Court of Criminal Appeals, in turn, denied relief based

on the trial court's findings. Petitioner has not presented clear

and convincing evidence in rebuttal. Thus, relying on the

presumptive correctness of the state courts' factual findings, in conjunction with the state court records, the court conducts an independent review of petitioner's claims.

Under his first ground, petitioner claims Fortinberry was ineffective by failing to adequately prepare for trial because he did not make a request to the state for evidence favorable to the accused or attempt to discover any such evidence on his own. Specifically, he asserts that counsel should have discovered police reports involving the victim that could have been used as impeachment evidence against her. (Pet. 6, ECF No. 1; State Habeas R., vol. 1, 292-312.) To the extent raised in petitioner's state habeas application, counsel denied the allegations and discussed them in his affidavit as follows:

> Ms. Gilliland [sic] and I worked many hours on Petitioner's case. We read all of Petitioner's letters (approximately 20) which included areas of questioning for trial. Petitioner was very engaged in the defense of his case. We discussed the strategy and theme of his case. He knew what we were attempting and was in full agreement.
>
>     .  .  .
>
> Petitioner asserts that the victim had "multiple convictions" I saw no evidence of this. There are two offense reports in which the victim is the complainant but none where she is the suspect. The State produced no criminal histories of the victim even after a motion to do so was filed. The officer also denied the existence of a criminal history for the victim under

oath.

    . . .

       This ground alleges impeachment evidence regarding
two offense reports in which the victim was the injured
party. In one case, after making the deadly conduct-
family member report, she refused to cooperate in the
investigation and the detective wasn't convinced
complainant did not embellish the story. The other
offense report was another assault family violence. The
police interviewed both her and the suspect and the
detective determined that the complainant really didn't
care about the case so he cleared it and said that all
the elements of assault were not met.

       I do not believe this is impeachment evidence as
she was not questioned about it so she did not deny
anything regarding these reports. Furthermore the mere
fact that the police did not file a case against the
two suspects does not mean the assaults did not happen.

(State Habeas R., vol. 2, 403-04, ECF No. 27-9.)

    The state court found that petitioner's first attorney, who

filed a plethora of motions, filed a motion for production of

evidence favorable to the accused, which included a request for

"the arrest and/or conviction record of each State witness"; that

there was no evidence the state was ever in possession of the

reports or knew of their existence; that counsel saw no evidence

that the victim had prior convictions; that the police reports

are not evidence that the victim had prior convictions; and that

there was no evidence that the state failed to disclose evidence

favorable to petitioner because counsel did not file a second

9

motion. (*Id.* at 488, 490, 501.) The court also found that the reports "significantly predated" petitioner's offense and had nothing to do with his case. (*Id.* at 491.) Applying *Strickland,* the court concluded that petitioner had failed to demonstrate that there was a reasonable likelihood that the outcome of the proceedings would have been different had counsel investigated the case more or filed a second motion to provide favorable evidence prior to trial. (*Id.* at 497.)

The state courts' application of *Strickland* was not unreasonable. It is presumed that counsel made an adequate investigation, and, in this case, it appears counsel had the added benefit of a court-appointed investigator. (Clerk's R. 55, ECF No. 25-17.) *Strickland,* 466 U.S. at 689. Additionally, Tarrant County has an "open file" policy, and nothing in the record suggests that counsel should have been aware of the reports or suspected that impeaching evidence was being withheld. Nor does petitioner demonstrate any resulting prejudiced by counsel's failure to discover the reports. The reports indicate that in 2001 the victim was involved in a fight with another woman at an apartment complex but was not arrested in connection with the incident; that the victim was the complaining party in two reports taken in 2002; that the victim was arrested for

outstanding traffic warrants following one of the 2002 incidents; and that sometime before the 2002 reports, she was arrested for resisting arrest and failure to identify truthfully. Typically, evidence of an arrest may not be used for impeachment of a witness. *See United States v. Aguilar,* 754 F.2d 1202, 1206 (5th Cir. 1985). Nor is there any evidence that, as alleged by petitioner, the reports were false or made in retaliation. (Pet'r's Reply 10-11, ECF No. 37.) Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue. *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998).

Under his second ground, petitioner claims counsel was ineffective by failing to object to the following argument made by the prosecution during the guilt/innocence phase:

> Driving around his hood. He was familiar with that place, wasn't he? He knew all the hangouts. He knew everywhere to go to have undetected sex, didn't he? All those places he went. Let her go to the bathroom. We had sex here. He knew that place like the back of his hand *because he drives it. He drives it. Looking for people he can do what he wants to do with.* The man's a predator.

(App. to Pet'r's Reply 16, ECF No. 38; Reporter's R., vol. 6, 18, ECF No. 25-10 (emphasis added).) Petitioner urges that the argument served to insinuate to the jury that he was "habitually

11

driving around in a predatory manner hunting for multiple people to sexually assault." (Pet. at 6, ECF No. 1.) Counsel responded to the allegation in his affidavit as follows:

> The state asserts in closing argument that he knew what he was doing, that he knew the neighborhood. He knew where to go to have undetected sex. The fact that he went to a location and did in fact have undetected sex indicates he knew where he was going. This is not outside the scope of the evidence presented.

(State Habeas R., vol. 2, 403, ECF No. 27-9.)

Under state law, "summation of the evidence" is a proper area of jury argument. *Felder v. State,* 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992). Thus, the state habeas court found that as a matter of state law, the argument was proper as a summation of the evidence. Applying *Strickland*, the court concluded that counsel's decision to not object to the argument was therefore the result of reasonable trial strategy. The court also concluded that petitioner failed to demonstrate a reasonable likelihood that the result of the proceedings would have been different had counsel objected to the argument. (*Id.* at 495.)

The state courts' application of *Strickland* was not unreasonable. "[I]n our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law." *Young v. Dretke,* 356 F.3d 616, 628 (5th Cir.

2004). Accepting the state court's conclusion based on state law that the argument was proper, counsel was not ineffective for failing to raise an objection to it. *Ries v. Quarterman,* 522 F.3d 517, 531 (5th Cir. 2008). Counsel is not required to make frivolous motions or objections. *Green v. Johnson,* 160 F.3d 1029, 1037 (5th Cir. 1998); *United States v. Oakley,* 827 F.2d 1023, 1025 (5th Cir. 1987).

Under his fourth ground, petitioner claims counsel was ineffective by failing to object during voir dire to the state's use of a "prejudicial definition" of proof beyond a reasonable doubt based on the "Wheel of Fortune" television show. (Pet., Attach. 1-3, ECF No. 1.) According to petitioner, the hypothetical based on the show violated his right to a fair trial and his right to be convicted only upon proof of each element of the offense beyond a reasonable doubt, lessened the state's burden of proof, and tainted the presumption of innocence. (*Id.,* Attach. 1.) Relying solely on state law, the appellate court addressed the claim as follows (all grammatical and/or punctuation corrections and errors are in the original):

> **Failure to Object to Prosecutor's *Wheel of Fortune* Example**
>
> Appellant contends that his trial counsel was ineffective because he did not object or seek curative

instructions but instead

> allowed the State to indoctrinate . . . [the]
> jury with a prejudicial definition of proof
> beyond a reasonable doubt using the Wheel of
> Fortune as an example, which violated
> [a]ppellant['s] [constitutional] right to a
> fair trial, the due process right to be
> convicted of proof of all the elements
> [necessary] to constitute an offense beyond a
> reasonable doubt, the right to an impartial
> tribunal, lessened the State['s] burden of
> proof and tainted [a]ppellant['s]
> "presumption of innocence[.]"

During voir dire, the State used the following
example to explain the concept of proof beyond a
reasonable doubt:

> [STATE]: . . . Judge Vick mentioned this, and
> these are rights that are based on our
> [C]onstitution. We all have these rights. If
> we were committed—convicted of a crime,
> accused of a crime, we each and every one
> have these rights. If you get a traffic
> ticket, you still have these rights.
>
> A defendant has a presumption of
> innocence, and that stays with him until and
> unless we prove beyond a reasonable doubt
> that he is guilty.
>
> It's our burden, it's always our job to
> bring evidence, but it's not beyond all
> doubt. It's not a hundred percent.
>
> [JUROR], how could I prove something to you
> beyond any question whatsoever?
>
> [JUROR]: Evidence.
>
> [STATE]: Okay. But, I mean, you'd still have
> a question in your mind, wouldn't you?

Because you don't know these people, right?

[JUROR]: Right.

[STATE]: I mean, you have to make the best decision you can. So to prove it to you beyond all doubt, [Second Juror]? . . .

. . .

[STATE]: How could I prove it to you beyond all doubt, to get any doubt out of your mind?

[SECOND JUROR]: I'm not sure. I'd have to see—I'd have to see a big picture of all the evidence and then make a decision. You know, just talking, I don't know what would be in my mind. I would have to see everything to come up with that.

[STATE]: Okay. Thank you.

For most people, it's like, you know, I'm going to have to see it. I'm going to have to see it with my own eyes to have no doubt whatsoever.

And so, you know, until they invent my time machine and I can take every one of y'all back to the crime itself and let y'all see it, this is the standard we have. There's no way I could ever prove to anyone beyond all doubt. So this is the burden that we have. Because if y'all saw the crime, you wouldn't be able to be jurors, would you? You would be witnesses. I'd have a lot of good witnesses.

So it's not certainty. It's somewhere short of that. Where are my Wheel of Fortune watchers?

(Hands raised)

[STATE]: Oh, come on. I'm not the only one that watches that show, am I? I got through law school on this thing. [Third Juror].

[THIRD JUROR]: I love Wheel of Fortune.

[STATE]: Okay. Wheel of Fortune. Vanna turns the letter over as people guess and say, give me an M, she'll turn letters over. And at some point before the puzzle is complete, usually you can guess it. All the letters might not be turned over, but you know what it says, you know what the answer is.

Tim had a hard time with the second one, but he got the first one. We had Julia Roberts. The thrill of victory and the agony of defeat, that's an old one. So at some point before you get all the letters you know what the answer is. Is it [Fourth Juror]?

. . . .

[STATE]: Would you agree with that?

[FOURTH JUROR]: That at a certain point all reasonable doubt is gone or—

[STATE]: At a certain point the picture becomes clear.

[FOURTH JUROR]: Yes.

[STATE]: At some point it's earlier than others. You can guess what the—what it is before you get very many letters. Sometimes you need almost all of them.

[FOURTH JUROR]: It's always good to have all of them.

[STATE]: Yeah. It's always good to have all of them, but sometimes you don't. Are you

comfortable making a decision without all the letters?

[FOURTH JUROR]: Not a hundred percent sure on that one. I would have to, like I say, see all the evidence, see what kind of light it's presented in.

[STATE]: Okay. Anyone else who just doesn't think they would be able to do that? You're going to have to have all doubt removed?

Okay. I'm going to—don't see any hands or any head nods.

[Fifth Juror].

[FIFTH JUROR]: Yes.

[STATE]: Are you comfortable with making a decision maybe if you still have questions, but you're to the point where you're beyond a reasonable doubt?

[FIFTH JUROR]: If I'm to the point beyond a reasonable doubt, then I feel comfortable making a decision.

[STATE]: Okay. Thank you.

Appellant contends that the prosecutor's use of the word "letters" in the analogy encouraged the jury to convict even if all of the elements of the offense were not proved.

The use of a hypothetical fact situation during voir dire is permissible if it is used "to explain the application of the law." Because the court of criminal appeals has held that the better practice is for the trial court not to give a definition of reasonable doubt to the jury, it is permissible for the State to inquire into the jury's understanding of the parameters of that burden of proof. This area of inquiry is

designed not to "assign a precise meaning" to the term "beyond a reasonable doubt," which is left to the jurors themselves to apply in their own common sense understanding, but instead is to test whether the prospective jury members will hold the State to an impermissibly high or low burden of proof.

Here, the prosecutor's colloquy with the panel shows that she was engaging in a permissible inquiry into the prospective jurors' understanding of the proper parameters of the beyond a reasonable doubt burden of proof and how that relates to using circumstantial evidence to prove a case. It does not show that the State was urging the prospective jurors that they could convict upon less than the appropriate standard or if not all of the elements were proven. Regardless, even if counsel could be considered deficient for failing to object to this hypothetical, the court's charge properly instructed the jury that it must find "each and every element of the offense charged beyond a reasonable doubt" to convict; thus, we cannot say that such a failure would have affected the trial's outcome.

Accordingly, we conclude and hold that counsel was not ineffective by not objecting to the *Wheel of Fortune* hypothetical and that even if he was, the outcome of the trial would not have been different.

(Mem. Op. 13-17, ECF No. 25-3 (citations omitted).)

The state court's application of *Strickland* was not unreasonable. Deferring to the state court's conclusion based on state law that the hypothetical was proper, counsel was not ineffective for failing to raise an objection to it. *Ries*, 522 F.3d at 531. As previously noted, counsel is not required to make frivolous motions or objections. *Green*, 160 F.3d at 1037; *Oakley*,

827 F.2d at 1025.

Under his fifth ground, petitioner claims counsel was ineffective by failing to object during voir dire to the prosecutor's comment that if petitioner chose to testify he would lose the presumption of innocence. (Pet., Attach. 3-5, ECF No. 1.) The prosecutor explained to the panel that a criminal defendant does not have to testify and that, if a defendant decides not to testify for whatever reason, the jury could not "talk about it." (Reporter's R., vol. 3, 68, ECF No. 25-7.) The prosecutor pointed out, however, that—

> [i]f the Defendant does testify, he waives all those rights and gets up there and tells you what he wants to tell you, there's no special protection anymore. There's no presumption, there's no covering over him. He can be treated just like any other witness. He might be presumed to be innocent, but he's not presumed to be a truth-teller. You judge him like anyone else.

(Reporter's R., vol. 3, 69, ECF No. 25-7.) Counsel responded to petitioner's allegation in his affidavit by noting that "[a]t no time did the State allude that if a person testified that they lost the presumption of innocence." (State Habeas R., vol. 2, 402, ECF No. 27-9.)

The state habeas court found that the state's "explanation of petitioner's right to not testify and the jury's duty to gauge [h]is credibility if he did choose to testify was proper"; that

counsel did not object on that basis; and that counsel's decision not to object was the result of reasonable trial strategy. (State Habeas R., vol 2, 486-87, ECF No. 27-9.) Applying only the prejudice prong of *Strickland,* the state court concluded that petitioner had failed to demonstrate that there was a reasonable likelihood that the result of the proceeding would have been different had counsel objected to the state's voir dire. (*Id.* at 486, 496.)

The state courts' application of *Strickland* comports with Supreme Court precedent and was not unreasonable, especially in light of the trial judge's instructions and the prosecutor's earlier comments to the venire that "[a] defendant has a presumption of innocence, and that stays with him until and unless we prove beyond a reasonable doubt that he is guilty." (Reporter's R., vol. 3, 10, 62, ECF No. 25-7.) *Strickland*, 466 U.S. at 698 (it is not necessary to addressed both prongs of the test if the petitioner makes an insufficient showing on one).

Under his sixth ground, petitioner claims counsel was ineffective by misstating the law when he admonished petitioner outside the presence of the jury as follows:

> Mr. Ledet, you do understand that if you take the stand as a witness, that as a witness you lose the presumption of innocence and you will -- your testimony

would be treated as any other witness.

(*Id.*, vol. 5, 109.) In his affidavit, counsel denied telling petitioner that he lost the presumption of innocence just because he testified. (State Habeas R, vol. 2, 403, ECF No. 27-9.)

The state habeas court found that notwithstanding counsel's admonishment, petitioner still chose to testify and concluded that, because he did so, petitioner failed to show that a reasonable likelihood existed that the result of the proceeding would have been different had counsel advised him differently regarding his right to testify. (State Habeas R., vol. 2, 487, 496, ECF No. 27.9.)

The state courts' application was not unreasonable for the reason given. Clearly, petitioner chose to testify to relate his side of the story and, regardless of the consequences, his testimony was the only evidence available to contradict the victim's account. (Pet'r's Reply 3, ECF No. 37; Reporter's R., vol. 5, 109, ECF No. 25-9.)

Under his seventh, eighth, and ninth grounds, petitioner claims counsel was ineffective by failing to pursue suppression of that portion of his recorded custodial interrogation taken after he invoked his Fifth Amendment right to silence; to object "to the presentation . . . of a multitude of evidence" within

that portion of the interrogation where the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under Texas Rule of Evidence 403; and to pursue the suppression of that portion of the interrogation that "put into evidence several ways several times that Petitioner invoked his Miranda rights in the face of accusation," thereby allowing the jury to draw inferences of guilt from the evidence. (Pet., Attach. 6-9, ECF No. 1.) Petitioner asserts that the recording of his custodial interrogation, which was played in its entirety for the jury, reflects that he invoked his right to silence and terminated the interview by unequivocally and unambiguously asserting, "I don't even want to talk no more now." He further asserts that the detectives did not "honor the invocation, but continued to badger [him] with a relentless interrogation." (*Id.* at 6; Supp. Reporter's R., vol. 3, 25, ECF No. 25-16.)

Counsel responded to petitioner's allegations as follows:

> It was my trial strategy to not object to the interview as, in my opinion, reinforced our contention that Petitioner was innocent. Although pressured by the police detectives, Petitioner continued to maintain in [sic] innocence. I wanted the jury to see that he never wavered in spite of the persistence of the detectives. Petitioner knew this prior to trial and never questioned me regarding this.

(State Habeas R., vol. 2, 402, ECF No. 27-9.)

In overruling the issues on appeal, the appellate court addressed them as follows:

> Appellant's . . . points relate to his second trial counsel's failure to file a motion to suppress statements appellant made to the police in 2009 and that second counsel's failure to pursue a motion to suppress that appellant's prior counsel had filed. According to appellant, his statements to police should have been suppressed because he invoked his Fifth Amendment right to remain silent and because he had invoked his Fifth Amendment right to counsel.
>
> The clerk's record contains a form signed by appellant and the magistrate, entitled, "<u>RIGHT TO COUNSEL</u>," which states, "DO YOU WANT A COURT-APPOINTED LAWYER?" The box that was checked reads as follows:
>
> > YES, I BELIEVE THAT I AM ENTITLED TO AN APPOINTED LAWYER. I have been advised by the court of my right to representation by a lawyer for the charge pending against me. I certify that I am without means to employ a lawyer of my own choosing and I now request the court to select and appoint a lawyer for me. I understand that I may be required to repay Tarrant County for a court-appointed lawyer at a later time, under such terms as a court may determine based on my future financial status.
>
> When appellant was later interviewed by officers, without counsel present, they warned him of his *Miranda* rights, but he did not request counsel at that time in connection with the subsequent questioning.
>
> Once a person invokes his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by merely showing that the suspect responded to police-initiated interrogation after being advised of his rights again. *Edwards v. Arizona*, 451 U.S. 477, 485 (1981); *Pecina v.*

*State,* 361 S.W.3d 68, 75 (Tex. Crim. App.), *cert. denied,* 133 S. Ct. 256 (2012). This prophylactic rule protects a suspect who has made the decision not to speak to law-enforcement officers without his lawyer and who has clearly communicated that decision to the police from further police badgering. *Pecina,* 361 S.W.3d at 75.

It is the police officer or other law-enforcement agent who administers *Miranda* warnings, and he or she does so immediately before custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 444–45 (1966); *Pecina,* 361 S.W.3d at 75. Thus, the police must give the Fifth Amendment *Miranda* warnings during the process of custodial interrogation but before questioning actually begins. *Miranda,* 384 U.S. at 473–74; *Pecina,* 361 S.W.3d at 75–76. But the United States Supreme Court has never accepted the notion of an anticipatory invocation of *Miranda* rights (1) given by someone other than law-enforcement officers or other state agents or (2) outside the context of custodial interrogation. *McNeil v. Wisconsin,* 501 U.S. 171, 182 n.3 (1991); *Pecina,* 361 S.W.3d at 76. A preliminary hearing will not usually involve such a custodial interrogation context. *McNeil,* 501 U.S. at 182 n.3; *Pecina,* 361 S.W.3d at 76.

Thus, "a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the *Miranda* warnings." *Montejo v. Louisiana,* 556 U.S. 778, 794 (2009). And if he does invoke his Fifth Amendment right to counsel, "not only must the immediate contact end, but 'badgering' by later requests is prohibited." *Id.* at 794–95.

Because there is no evidence that appellant invoked his Fifth Amendment right to have counsel present for police questioning during the course of a custodial interrogation, under the Court of Criminal Appeals's analysis of this issue in *Pecina,* he would not have prevailed on a motion to suppress on the ground he raises in his appeal; thus, counsel was not

24

ineffective under *Strickland* for failing to pursue a
motion to suppress on that basis. *See Pecina,* 361
S.W.3d at 76; *Jackson v. State,* 973 S.W.2d 954, 957
(Tex. Crim. App. 1998). Moreover, even if counsel had
pursued such a motion and prevailed, there is not a
reasonable probability the outcome of the trial would
have been different.

Contrary to the concurring opinion's claim that
our opinion is advisory as it relates to addressing the
likely success of his motion to suppress, appellant
raises the point in the context of his claim of
ineffective assistance of counsel. As the concurrence
knows, under *Strickland,* this requires us to evaluate
whether but for counsel's alleged errors, the result of
the proceeding would be different. *Strickland,* 466 U.S.
at 687, 694. As the Supreme Court stated in *Strickland,*

> there is no reason for a court deciding an
> ineffective assistance claim to approach the
> inquiry in the same order or even to address
> both components of the inquiry if the
> defendant makes an insufficient showing on
> one. In particular, a court need not
> determine whether counsel's performance was
> deficient before examining the prejudice
> suffered by the defendant as a result of the
> alleged deficiencies. The object of an
> ineffectiveness claim is not to grade
> counsel's performance. If it is easier to
> dispose of an ineffectiveness claim on the
> ground of lack of sufficient prejudice, which
> we expect will often be so, that course
> should be followed. Courts should strive to
> ensure that ineffectiveness claims not become
> so burdensome to defense counsel that the
> entire criminal justice system suffers as a
> result.

*Id.* at 697, 104 S. Ct. at 2069; *see also Ex parte
Martinez,* 330 S.W.3d 891, 901 (Tex. Crim. App.) ("The
two prongs of *Strickland* need not be analyzed in a
particular order . . . ."), *cert. denied,* 131 S. Ct.

3073 (2011); *Smith v. State,* 286 S.W.3d 333, 342 (Tex. Crim. App. 2009) (declining to analyze whether first prong of *Strickland* met because second prong was not). And *Thompson* specifically states that the failure to make the required showing of "*either* deficient performance *or* sufficient prejudice defeats the ineffectiveness claim." *Thompson,* 9 S.W.3d at 813.

While the concurring opinion is correct that appellant's motion to suppress was not litigated at trial, we are required to evaluate its likely success to evaluate appellant's point on appeal: counsel's effectiveness in light of his failure to pursue the motion to suppress at trial. Thus, our opinion on the likelihood of the success of that motion is not advisory. *See Smith,* 286 S.W.3d at 342.

. . .

In his second through fourth points, appellant contends counsel was ineffective for failing to object to, and move to suppress, the part of the interview in which he invoked his right to terminate the interview. The State concedes that appellant did so and agrees that "the portion of the tape in which [a]ppellant invokes his right to terminate the interview was not admissible before the jury." But the State contends that, nevertheless, trial counsel was not ineffective because his decision not to object could have been based on reasonable trial strategy.

When the detectives told appellant they were going to check his DNA, appellant very clearly told them that he ended and cancelled the interview. Nevertheless, the detectives continued to question him, and he continued to deny knowing or having committed an offense against the complainant. Appellant's counsel did not object to the playing of the part of the interview that included appellant's termination of the interview and his subsequent denial of the detectives' allegations that he sexually assaulted the complainant. The State emphasized appellant's denial in its closing argument by contrasting it with appellant's testimony at trial

that he had consensual sex with her.

Regardless of the fact that part of the interview was inadmissible, we do not believe that the outcome of the proceedings would have been any different. The issue of whether the complainant consented was highly disputed at trial. As appellant points out, the jury had to decide whether they believed appellant's testimony or the complainant's; the DNA evidence merely confirmed that the sex did occur. Thus, any evidence tending to impeach appellant's credibility was highly probative. But appellant was able to explain extensively during his testimony that he did not recognize the photograph of the complainant shown to him by the detectives during the interview. Also, Detective O'Brien admitted on cross-examination that he had shown appellant a more recent driver's license photo of the complainant, that the detective did not know what she looked like in 2004, and that appellant could have been unable to identify her for that reason. Appellant was also able to explain that because of the passage of time, the complainant had gained a significant amount of weight; thus, he did not recognize her in the interview. The complainant had previously testified that she had gained weight since the sexual assault. Defense counsel discussed the matter during closing argument, pointing to appellant's testimony that his failure to initially recognize the complainant was a mistake and that appellant had later written a letter to the district attorney's office stating that he had previously been mistaken. Accordingly, appellant's counsel had the opportunity to neutralize the impact of the State's use of appellant's statement, bringing the issue back to the jury's choice over whom to believe; the jury chose the complainant. For this reason, appellant has not shown that but for counsel's failure to so object, there is a reasonable probability that the outcome of the trial would have been different.

Moreover, we do not believe that there is a reasonable probability the trial's result would have been changed had counsel been able to exclude the part

of the interview in which appellant invoked his right
to terminate it. Appellant's statements after he
invoked his right were no different than his statements
prior to doing so; he continued to deny knowing or
having sex with the complainant. In fact, he accused
the detectives of lying when they told him they knew
what he had done. Thus, the record does not show a
reasonable probability that the outcome of the trial
would have been different had counsel been successful
in having that part of the statement excluded. *See Ali
v. State,* 26 S.W.3d 82, 88 (Tex. App.—Waco 2000, no
pet.); *see also Lykins v. State,* 784 S.W.2d 32, 34–36
(Tex. Crim. App. 1989) (holding that statements taken
in violation of *Miranda* and article 38.22 could be used
to impeach defendant).

Contrary to the concurring opinion's assertion, we
are not approving mistakes by the police and prosecutor
"by our silence." Nor have we looked for a way "to
justify the actions of either the State or the
defense." *Id.* We are simply following the law and
higher courts' precedent, which we are required to do.
*Sierra v. State,* 157 S.W.3d 52, 60 (Tex. App.—Fort
Worth 2004) (op. on reh'g), *aff'd,* 218 S.W.3d 85 (Tex.
Crim. App. 2007); *see Swilley v. McCain,* 374 S.W.2d
871, 875 (Tex. 1964) (holding that a state intermediate
appellate court is bound to follow precedent of the
highest courts of the state). Moreover, the State
itself concedes that part of the interview was
inadmissible because the police should have ended it
after appellant said he wanted to end it, a fact that
we have clearly pointed out in our opinion.

(Mem. Op. 6-13, ECF No. 25-3 (parallel citations to Supreme Court

Reporter and citations to the Majority and/or Concurring Opinions

omitted).)

The state court's application of *Strickland* was not

unreasonable. Strategic decisions by counsel are virtually

unchallengeable and generally do not provide a basis for habeas relief. *Strickland,* 460 U.S. at 691.

Under his tenth ground, petitioner claims that—

[b]efore Petitioner testified, the D.A. implied as evidence of guilt before the jury that Petitioner had an obligation (unfulfilled) to give an explanation to a question (unfulfilled) detectives asked him **after he** invoked his 5th Amend. right to silence; on direct D.A. Choy asked detective: "Did you give the defendant ample opportunity to explain why his DNA was in [the victim]? . . . Did he ever give you an explanation why?"; counsel was ineffective under the 6th & 14th Amend. for **not objecting** to this line of questioning under the 5th & 14th Amend.

(Pet., Attach. 10, ECF No. 1 (emphasis in original).)

The following exchange occurred during the state's direct examination of detective O'Brien after the detective testified that he told petitioner that his DNA was found on and inside the victim:

Q. Detective O'Brien, did you give the Defendant ample opportunity to tell you whether or not he knew [the victim]?

A. I believe I did, yes.

Q. And did the Defendant ever tell you whether or not he knew her?

A. No, he did not.

Q. In fact, he said he didn't know her?

A. Over and over again.

29

Q. Did you give the Defendant ample opportunity to explain why his DNA was in [the victim]?

A. I believe I did. I asked him numerous times about it.

Q. Did he ever give you an explanation why?

A. No, he didn't.

(Reporter's R., vol. 5, ECF No. 25-9.)

The state habeas court treated the claim as a prosecutorial-misconduct claim and found that it was a "record claim" that could have been, but was not, raised on direct appeal; thus, the court concluded that the claim could not be raised for the first time on state habeas review. (State Habeas R., vol. 2, 489, 500, ECF No. 27-9.) Such a procedural-default finding typically bars a federal court on habeas review from reaching the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 802-04 (1991); *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991). However, because the state courts did not address the claim as an ineffective-assistance claim, this court does not apply the procedural-default doctrine. Nevertheless, having considered the claim on the merits, petitioner cannot demonstrate *Strickland* prejudice. On cross-examination, counsel was able to highlight the fact that no pictures of the victim were taken on the night in question; that the detective did not know when the picture was taken and

could have been taken any time before 2009; that the victim could have looked "quite a bit differently" from the picture on the night in question; and that it was possible petitioner did not recognize the victim from the picture. (Reporter's R., vol. 5, 80-83, ECF No. 25-9.) This testimony minimized the prejudice, if any, of the state's line of questioning.

Under his eleventh ground, petitioner claims counsel was ineffective by failing to object to the deprivation of his Sixth Amendment right to a public trial. (Pet., Attach. 10, ECF NO. 1.) Petitioner complains that the prospective jurors filled up the entire gallery, leaving no room for his parents in the public seating area. He asserts that counsel should have objected to his parents' exclusion and to the trial court's failure to perform a *Waller* test. (*Id.*) In *Waller v. Georgia,* 467 U.S. 39 (1984), the Supreme Court held that under the Sixth Amendment, a trial court may exclude the public from the courtroom only upon satisfaction of a four-factor test, and, in *Presley v. Georgia,* 558 U.S. 209 (2010), the Supreme Court reiterated that this test applies to closures during voir dire.

Counsel responded to petitioner's allegation as follows:

> Although the courtroom was full, there was space for Petitioner's parents. Petitioner's claims that I refused to allow his parents in are false. I did tell

them I did not know where the[y] would sit during voir
dire. I was busy getting ready for jury selection so I
did not make an attempt to see to it that they had
accommodations in the courtroom during voir dire.

    . . .

    I fail to see how Petitioner "suffered a
structural defect" due to defense counsel not objecting
to Petitioner's parents not being in the courtroom
during voir dire. Because the gallery was full,
Petitioner's parents assumed they were not allowed in.
I was never asked to see if there was somewhere else
they could sit during voir dire.

    . . .

    I cannot speak for the trial judge as to why he
did not perform a "sua sponte Waller" test, nor did I
see the need for one. Petitioner's parents were present
for his trial and were not excluded from the voir dire
portion.

(State Habeas R., vol. 2, 401, ECF No. 27-9.)

The state habeas court entered findings consistent with
counsel's affidavit and found that there was no evidence that the
trial court was made aware that petitioner's parents felt they
were being excluded from the courtroom. (*Id.* at 485.)
Nonetheless, the state concluded that the claim was waived for
habeas review by petitioner's failure to object in the trial
court and that counsel's decision to not object to the closure
because the courtroom was not closed was the result of reasonable
trial strategy. (*Id.* at 494-95.)

The state courts' application of *Strickland* was not unreasonable. The record of the proceedings does not indicate that the trial judge ordered the courtroom closed to the public during voir dire. Moreover, the Supreme Court recently held that when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically. The burden is on the defendant to show either a reasonable probability of a different outcome in his case or that the particular public-trial violation was so serious as to render his trial fundamentally unfair. *See Weaver v. Massachusetts,* No. 16-240, 2017 WL 2674153, at *11 (U.S. June 22, 2017). Petitioner cannot show that there is a reasonable probability the jury would not have convicted him if his parents had been present in the courtroom during voir dire or that their absence rendered his trial fundamentally unfair. *See id.* at *13.

In his third and final ground, petitioner claims that the effect of counsel's cumulative errors violated the "Due Process guarantee of fundamental fairness" and necessitates a new trial. (Pet. 7, ECF No. 1.) Replying on state law, the state habeas court concluded that this claim lacked merit because "[t]here is no authority for the proposition that the cumulative effect of non-errors requires reversal." The state courts' conclusion is

33

neither contrary to nor an unreasonable application of *Strickland*. *See, e.g., Leal v. Dretke*, 428 F.3d 543, 552-53 (5th Cir. 2005) (holding cumulative error of counsel did not warrant COA where none of the errors satisfied *Strickland's* prejudice prong); *Dodson v. Stephens*, 611 Fed. App'x 168, 178-79 (5th Cir. May 1, 2015) (holding no cumulative analysis required where counsel "did not engage in multiple instances of deficient performance").

## V. Evidentiary Hearing

Petitioner requests an evidentiary hearing, however his claims were adjudicated on the merits in state court, save for ground ten, and he has failed to overcome the limitation of § 2254(d)(1) on the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 181-82 (2011); *Pape v. Thaler*, 645 F.3d. 281, 287-88 (5th Cir. 2011). Thus, no evidentiary hearing is warranted.

For the reasons discussed herein,

The court ORDERS that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional

right.

       SIGNED June __28__, 2017.

                          JOHN MCBRYDE
                          UNITED STATES DISTRICT JUDGE